1  McGREGOR W. SCOTT
   United States Attorney
2  ROBERT M. TWISS
   Assistant United States Attorneys
3  501 I Street, 10th Floor
   Sacramento, California 95814
4  Telephone: (916) 554-2767

5

6

7

8          IN THE UNITED STATES DISTRICT COURT FOR THE

9               EASTERN DISTRICT OF CALIFORNIA

10

11 UNITED STATES OF AMERICA, ) CR. No. 07-017 GGH
                             )
12              Plaintiff,   ) Government's *Ex Parte* Application
                             ) to Destroy Bulk Marijuana
13         v.                )
                             )
14 WEI JIE MA, et al,        )
                             )
15              Defendants.  )
                             )
16                           )
                             )
17 _____)

18      The United States hereby moves *ex parte* for an order

19 allowing for destruction of the following marijuana plants,

20 marijuana root balls, and marijuana shake seized from seven

21 locations on or about January 12, 2007.

22      The locations and quantity of marijuana are as follows:

23 (1) 17811 McKee Blvd, Lathrop, CA (552 marijuana plants); (2)

24 2171 Tennis Court Lane, Tracy, CA (575 marijuana plants and 9

25 plastic bags of marijuana shake); (3) 627 Brookhurst Blvd,

26 Lathrop, CA (470 marijuana root balls); (4) 676 Pioneer Avenue,

27 Lathrop, CA (503 marijuana plants); (5) 700 Pioneer Avenue,

28 Lathrop, CA (1,171 marijuana plants and root balls and 9 plastic

1  bags of marijuana shake); (6) 16581 Upper Pasture Court, Lathrop,
2  CA (1,474 marijuana plants and root balls); and (7) 975 Dry Creek
3  Place, Lathrop, CA (476 marijuana plants and 6 trays of marijuana
4  shake).

5  The undersigned attorney for the United States has been
6  advised by DEA Special Agents Matt Clayton, Spencer Savage and
7  DEA Supervisory Special Agent Bernie Sabonis that they and other
8  agents of DEA seized the above listed marijuana plants and
9  related materials at the locations identified.  The agents have
10  advised the undersigned that after harvesting all of the mari-
11  juana at each location and collecting it in a bulk pile at each
12  location, an agent took random samples in accord with DEA agency
13  policy.  The agents took 10 random samples of approximately 5
14  grams apiece from the bulk marijuana at each house, plus one
15  kilogram of marijuana cuttings from the same bulk marijuana pile.
16  This random sampling technique was used at each location.  The
17  random samples then have been sent, or will be sent, to the DEA
18  labor-atory in San Francisco for analysis.

19  DEA is authorized by federal regulation and by Title 21 of
20  the United States Code to summarily seize and destroy Schedule I
21  and Schedule II controlled substances.  See Title 21, United
22  States Code, Section 881, and Title 28, C.F.R. § 50.21(f).

23  Title 21, United States Code, Section 881(g) provides in
24  relevant part that all species of plants from which controlled
25  substances in schedules I and II may be derived which have been
26  planted or cultivated in violation of the Controlled Substances
27  Act may be seized and summarily forfeited to the United States.
28  The statutory provision goes on to say that the Attorney General,

1  or his authorized agent, shall have authority to enter any
2  dwelling pursuant to a warrant, and to cut, harvest, carry off
3  and destroy such plants.

4  Title 28, C.F.R. §50.21(d) and (f) provides that with the
5  consent of the United States attorney, DEA can summarily destroy
6  all marijuana in excess of the representative sample, which is
7  defined in the regulation to be the exemplar for testing and a
8  sample aggregate portion of the whole amount seized sufficient
9  for evidentiary purposes.

10  The random samples described above are sufficient for
11  testing and for evidentiary purposes.  Marijuana is a Schedule I
12  controlled substance.  Accordingly, marijuana in excess of the
13  representative sample can be summarily destroyed by DEA pursuant
14  to Title 21, United States Code, Section 881 and 28 C.F.R.
15  Section 50.21, on scene without taking the harvested marijuana
16  into evidence, which is DEA's normal practice.

17  The draft search warrants in this case each contained a
18  clause authorizing the seizing agents to summarily destroy the
19  bulk marijuana after taking representative samples as set forth
20  above.  The special agents have advised the undersigned attorney
21  for the United States that the Hon. Gregory G. Hollows, United
22  States Magistrate Judge, struck this language from the draft
23  search warrants at the time at which they were issued by the
24  Court.  As a result, the seizing agents were of the belief that
25  Judge Hollows' order in the search warrant prohibited them from
26  summarily destroying the bulk marijuana as otherwise authorized
27  by statute and regulation in Title 21, United States Code,
28  Section 881 and 28 C.F.R. § Section 50.21.  As a result, the

3

1  agents have seized and maintained all of the bulk marijuana from
2  the seven search locations, i.e., approximately 5,000 plants.
3  Normally all of the bulk marijuana except for the random samples
4  described above would have been cut down on the scene and sent
5  out for immediate destruction without ever being booked into
6  evidence.

7      Special Agent Clayton has advised the undersigned counsel
8  for the United States that these plants have been counted,
9  photographed and videotaped, and the representative samples set
10 forth above have been collected.  The Drug Enforcement Adminis-
11 tration does not have adequate storage facilities or sufficient
12 personnel to safely guard the marijuana plants which have been
13 seized. According to Special Agent Clayton, without storage
14 facilities which can protect the integrity of the plants, the
15 plants will degrade rapidly.

16     WHEREFORE, the United States moves this honorable Court for
17 an order authorizing the destruction of approximately 5,000
18 marijuana plants and root balls which exceed the representative
19 samples, in accord with Title 21, United States Code, section
20 881(g) and 28 C.F.R. § 50.21(d) and (f).

21 Dated: January 22, 2007

22                              McGREGOR W. SCOTT
                               United States Attorney
23

24                         By:  ROBERT M. TWISS
25                              Assistant U.S. Attorney
26
   ///
27
   ///
28

4

1          DECLARATION

2          I, ROBERT M. TWISS, hereby declare under penalty of perjury

3     that I am an Assistant United States Attorney for the Eastern

4     District of California, and that the factual representations set

5     forth above are true and correct to the best of my knowledge and

6     belief.

7     Dated: January 22, 2007

8                                          ROBERT M. TWISS
9                                          Assistant U.S. Attorney

10                   ORDER

11         It is so ORDERED.

12    Dated: January 22, 2007

13                                    GREGORY G. HOLLOWS
                                      GREGORY G. HOLLOWS
14                                    U.S. District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

Rules... Judiciary and Judicial Procedure, be amended to...
United States magistrate judge after Dec. 1, 1990, with any reference to United States magistrate or magistrate in Title 28, in any other Federal statute, etc., deemed a reference to United States magistrate judge appointed under section 631 of Title 28, see section 321 of Pub.L. 101–650, set out as a note under section 631 of Title 28.

## § 881. Forfeitures

### (a) Subject property

The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this subchapter.

(2) All raw materials, products, and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance or listed chemical in violation of this subchapter.

(3) All property which is used, or intended for use, as a container for property described in paragraph (1), (2), or (9).

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1), (2), or (9).

(5) All books, records, and research, including formulas, microfilm, tapes, and data which are used, or intended for use, in violation of this subchapter.

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

(7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment.

(8) All controlled substances which have been possessed in violation of this subchapter.

imported, exported, manufactured, possessed, distributed, dispensed, acquired, or intended to be distributed, dispensed, acquired, imported, or exported, in violation of this subchapter or subchapter II of this chapter.

(10) Any drug paraphernalia (as defined in section 863 of this title).

(11) Any firearm (as defined in section 921 of Title 18) used or intended to be used to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2) and any proceeds traceable to such property.

### (b) Seizure procedures

Any property subject to forfeiture to the United States under this section may be seized by the Attorney General in the manner set forth in section 881(b) of Title 18.

### (c) Custody of Attorney General

Property taken or detained under this section shall not be repleviable, but shall be deemed to be in the custody of the Attorney General, subject only to the orders and decrees of the court or the official having jurisdiction thereof. Whenever property is seized under any of the provisions of this subchapter, the Attorney General may—

(1) place the property under seal;

(2) remove the property to a place designated by him; or

(3) require that the General Services Administration take custody of the property and remove it, if practicable, to an appropriate location for disposition in accordance with law.

### (d) Other laws and proceedings applicable

The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under any of the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof; except that such duties as are imposed upon the customs officer or any other person with respect to the seizure and forfeiture of property under the customs laws shall be performed with respect to seizures and forfeitures of property under this subchapter by such officers, agents, or other persons as may be authorized or designated for that purpose by the Attorney General, except to the

United States, the owners of which are unknown, shall be deemed contraband and summarily forfeited to the United States.

(2) The Attorney General may direct the destruction of all controlled substances in schedule I or II seized for violation of this subchapter; all dangerous, toxic, or hazardous raw materials or products subject to forfeiture under subsection (a)(2) of this section; and any equipment or container subject to forfeiture under subsection (a)(2) or (8) of this section which cannot be separated safely from such raw materials or products under such circumstances as the Attorney General may deem necessary.

**(g) Plants**

(1) All species of plants from which controlled substances in schedules I and II may be derived which have been planted or cultivated in violation of this subchapter, or of which the owners or cultivators are unknown, or which are wild growths, may be seized and summarily forfeited to the United States.

(2) The failure, upon demand by the Attorney General or his duly authorized agent, of the person in occupancy or in control of land or premises upon which such species of plants are growing or being stored, to produce an appropriate registration, or proof that he is the holder thereof, shall constitute authority for the seizure and forfeiture.

(3) The Attorney General, or his duly authorized agent, shall have authority to enter upon any lands, or into any dwelling pursuant to a search warrant, to cut, harvest, carry off, or destroy such plants.

**(h) Vesting of title in United States**

All right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section.

**(i) Stay of civil forfeiture proceedings**

The provisions of section 981(g) of Title 18 regarding the stay of a civil forfeiture proceeding shall apply to forfeitures under this section.

**(j) Venue**

In addition to the venue provided for in section 1395 of Title 28 or any other provision of law, in the case of property of a defendant charged with a violation that is the basis for forfeiture of the property under this section, a proceeding for forfeiture under this section may be brought in the judicial district in which the defendant owning such property is found or in the judicial district in which the criminal prosecution is brought.

The functions of the Attorney General under this section shall be carried out by the Postal Service pursuant to such agreement as may be entered into between the Attorney General and the Postal Service.

(Pub.L. 91–513, Title II, § 511, Oct. 27, 1970, 84 Stat. 1276; Pub.L. 95–633, Title III, § 301(a), Nov. 10, 1978, 92 Stat. 3777; Pub.L. 96–132, § 14, Nov. 30, 1979, 93 Stat. 1048; Pub.L. 98–473, Title II, §§ 306, 309, 518, Oct. 12, 1984, 98 Stat. 2050, 2051, 2075; Pub.L. 99–570, Title I, §§ 1006(c), 1865, 1992, Oct. 27, 1986, 100 Stat. 3207-7, 3207-54, 3207-60; Pub.L. 99–646, § 74, Nov. 10, 1986, 100 Stat. 3618; Pub.L. 100–690, Titles V, VI, §§ 5105, 6059, 6074, 6075, 6077(a), (b), 6253, Nov. 18, 1988, 102 Stat. 4301, 4319, 4323–4325, 4363; Pub.L. 101–189, Div. A, Title XII, § 1215(a), Nov. 29, 1989, 103 Stat. 1569; Pub.L. 101–647, Title XX, §§ 2003, 2004, 2007, 2008, Nov. 29, 1990, 104 Stat. 4855, 4856; Pub.L. 102–239, § 2, Dec. 17, 1991, 105 Stat. 1912; Pub.L. 102–583, § 6(a), Nov. 2, 1992, 106 Stat. 4932; Pub.L. 103–447, Title I, §§ 102(d), 103(a), Nov. 2, 1994, 108 Stat. 4693; Pub.L. 104–237, Title II, § 201(b), Oct. 3, 1996, 110 Stat. 3101; Pub.L. 106–185, §§ 2(c)(2), 5(b), 8(b), Apr. 25, 2000, 114 Stat. 210, 214, 216; Pub.L. 107–273, Div. B, Title IV, § 4002(e)(3), Nov. 2, 2002, 116 Stat. 1810.)

[1] So in original. No subsec. (k) has been enacted.

## HISTORICAL AND STATUTORY NOTES

**References in Text**

"This subchapter," referred to in text, was in the original "this title" which is Title II of Pub.L. 91–513, Oct. 27, 1970, 84 Stat. 1242, and is popularly known as the "Controlled Substances Act". For complete classification of Title II to the Code, see Short Title note set out under § 801 of this title and Tables.

The customs laws, referred to in subsec. (d) are classified generally to Title 19, Customs Duties.

Schedules I and II, referred to in subsecs. (f) and (g)(1), are set out in section 812(c) of this title.

**Transfer of Functions**

Bureau of Narcotics and Dangerous Drugs, including office of Director thereof, in Department of Justice abolished by Reorg. Plan No. 2 of 1973, eff. July 1, 1973, 38 F.R. 15932, 87 Stat. 1091, set out in the Appendix to Title 5, Government Organization and Employees. Reorg. Plan No. 2 of 1973 also created in Department of Justice a single, comprehensive agency for enforcement of drug laws to be known as Drug Enforcement Administration, empowered Attorney General to authorize performance by officers, employees, and agencies of Department of functions transferred to him, and directed Attorney General to coordinate all drug law enforcement functions to assure maximum cooperation between Drug Enforcement Administration, Federal Bureau of Investigation, and other units of Department of Justice involved in drug law enforcement.

**Effective and Applicability Provisions**

2000 Acts. Amendments by Pub.L. 106–185, applicable to any forfeiture proceeding commenced on or after the date that is 120 days after April 25, 2000, see section 21 of Pub.L. 106–185, set out as a note under section 1324 of Title 8.

-n mo-
ctives
to be
volves
or be-
over
'ause.
' pen-
'nited
o. (1)
ninn-
held
tiga-
pro-
3w of
costs
.S.C.
part-
18 in
pro-
De-
d as
anc-
—ei-
1s a
1ich
the
any
'ute
ted
her
to
the
1ry

ted
ra-
to
'ht
es,
'or
ke
of
he
ad
n-

m
n
r
1-

t
t
e

(iii) If necessary, seek authori[...]
filing an appeal or petition for[...]
damus.

The Solicitor General, the Ass[...]
Attorneys General, and the U.S.[...]
neys are instructed to take all[...]
priate steps to resist the imposit[...]
such penalties or sanctions again[...]
United States.

(d) *Additional restrictions.* (1) T[...]
sistant Attorneys General, the U.S[...]
torneys, and their delegates, hav[...]
authority to settle or compromis[...]
interests of the United States in[...]
pursuant to an arbitration proce[...]
any respect that is inconsistent[...]
the limitations upon the delegat[...]
settlement authority under the De[...]
ment's regulations and the direct[...]
of the litigation divisions. See 28[...]
part 0, subpart Y and appendix to[...]
part Y. The attorney for the gov[...]
ment shall demand trial de novo in[...]
case in which:

(i) Settlement of the case on[...]
basis of the amount awarded woul[...]
be in the best interests of the U[...]
States;

(ii) Approval of a proposed set[...]
ment under the Department's reg[...]
tions in accordance with the arbit[...]
tion award cannot be obtained w[...]
the period allowed by the local rule[...]
rejection of the award; or

(iii) The client agency opposes sett[...]
ment of the case upon the terms of[...]
settlement award, unless the app[...]
priate official of the Department[...]
proves a settlement of the case in[...]
cordance with the delegation of sett[...]
ment authority under the Depa[...]
ment's regulations.

(2) Cases sounding in tort and aris[...]
under the Constitution of the Unit[...]
States or under a common law theor[...]
filed against an employee of the Unit[...]
States in his personal capacity for a[...]
tions within the scope of his employ[...]
ment which are alleged to have caused[...]
injury or loss of property or person[...]
injury or death are not appropriate fo[...]
arbitration.

(3) Cases for injunctive or declara[...]
tory relief are not appropriate for arbi[...]
tration.

(4) The Department reserves the[...]
right to seek any appropriate relief to[...]
which its client is entitled, includin[...]
injunctive relief or a ruling on motions[...]

[...]ment on the pleadings, for sum-
[...]dgment, or for qualified immu-
[...] on issues of discovery, before
[...]ding with the arbitration proc-

[...] view of the provisions of the
[...] Rules of Evidence with respect
[...]ement negotiations, the Depart-
[...]bjects to the introduction of the
[...]tion process or the arbitration
[...] in evidence in any proceeding in
[...]the award has been rejected and
[...]se is tried de novo.

[...]the Department's consent for par-
[...]tion in an arbitration program is
[...]waiver of sovereign immunity or
[...] defenses of the United States ex-
[...]as expressly stated; nor is it in-
[...]ded to affect jurisdictional limita-
[...]ns (*e.g.*, the Tucker Act).

[...]*Notification of new or revised arbi-
tration rules.* The U.S. Attorney in a
[...]trict which is considering the adop-
[...]on of or has adopted a program of
[...]urt-annexed arbitration including
[...]ses involving the United States shall:
[...]) Advise the district court of the
[...]ovisions of this section and the limi-
[...]tions on the delegation of settlement
authority to the United States Attor-
ney pursuant to the Department's reg-
ulations and the directives of the liti-
gation divisions; and

[...] Forward to the Executive Office
for United States Attorneys a notice
that such a program is under consider-
ation or has been adopted, or is being
revised, together with a copy of the
rules or proposed rules, if available,
and a recommendation as to whether
United States participation in the pro-
gram as proposed, adopted, or revised,
would be advisable, in whole or in part.

[Order No. 1109-85, 50 FR 40524, Oct. 4, 1985]

§50.21 Procedures governing the de-
struction of contraband drug evi-
dence in the custody of Federal law
enforcement authorities.

(a) *General.* The procedures set forth
below are intended as a statement of
policy of the Department of Justice
and will be applied by the Department
in exercising its responsibilities under
Federal law relating to the destruction
of seized contraband drugs.

(b) *Purpose.* This policy implements
the authority of the Attorney General
under title I, section 1006(c)(3) of the

Anti-Drug Abuse Act of 1986, Public
Law 99-570 which is codified at 21
U.S.C. 881(f)(2), to direct the destruc-
tion, as necessary, of Schedule I and II
contraband substances.

(c) *Policy.* This regulation is intended
to prevent the warehousing of large
quantities of seized contraband drugs
which are unnecessary for due process
in criminal cases. Such stockpiling of
contraband drugs presents inordinate
security and storage problems which
create additional economic burdens on
limited law enforcement resources of
the United States.

(d) *Definitions.* As used in this sub-
part, the following terms shall have
the meanings specified:

(1) The term *Contraband drugs* are
those controlled substances listed in
Schedules I and II of the Controlled
Substances Act seized for violation of
that Act.

(2) The term *Marijuana* is as defined
in 21 U.S.C. 801(15) but does not in-
clude, for the purposes of this regula-
tion, the derivatives hashish or hashish
oil for purposes of destruction.

(3) The term *Representative sample*
means the exemplar for testing and a
sample aggregate portion of the whole
amount seized sufficient for current
criminal evidentiary practice.

(4) The term *Threshold amount* means:
(i) Two kilograms of a mixture or
substance containing a detectable
amount of heroin;

(ii) Ten kilograms of a mixture or
substance containing a detectable
amount of—

(A) Coca leaves, except coca leaves
and extracts of coca leaves from which
cocaine, ecgonine, and derivatives of
ecgonine or their salts have been re-
moved;

(B) Cocaine, its salts, optical and
geometric isomers, and salts of iso-
mers;

(C) Ecgonine, its derivatives, their
salts, isomers, and salts of isomers; or

(D) Any compound, mixture, or prep-
aration which contains any quantity of
any of the substances referred to in
paragraphs (d)(4)(ii) (A) through (C) of
this section;

(iii) Ten kilograms of a mixture or
substance described in paragraph
(d)(4)(ii)(B) of this section which con-
tains cocaine base;

74

75

CONTENT:

§ 50.22

sufficient to serve as evidence in the trial courts of that jurisdiction; and

(3) Photographically depict, and, if requested by the appropriate prosecutorial authority, videotape, the contraband drugs as originally packaged in an appropriate display of the seized contraband drugs so as to create evidentiary exhibits for use at trial;

(4) Isolate and retain the appropriate threshold amounts of contraband drug evidence when an amount greater than the appropriate threshold amount has been seized, or when less than the appropriate threshold amounts of contraband drugs have been seized, the entire amount of the seizure, with the exception of marijuana, for which a representative sample shall be retained; and

(5) Maintain the retained portion of the contraband drugs until the evidence is no longer required for further proceedings, at which time it may be destroyed, first having obtained the consent of the U.S. Attorney, an Assistant U.S. Attorney, or the responsible state local prosecutor;

(6) Notify the appropriate U.S. Attorney, Assistant U.S. Attorney, or the responsible state/local prosecutor to obtain consent to destroy the retained amount or representative sample whenever the related suspect(s) has become a fugitive from justice for a period of six years. An exemplar sufficient for testing will be retained consistent with this section.

(f) *Procedures.* Responsibilities of the U.S. Attorney or the District Attorney (or equivalent state/local prosecutorial authority). When so notified by the Federal Bureau of Investigation or the Drug Enforcement Administration of an intent to destroy excess contraband drugs, the U.S. Attorney or the District Attorney (or equivalent) may:

(1) Agree to the destruction of the contraband drug evidence in excess of the threshold amount, or for marijuana in excess of the representative sample, prior to the normal sixty-day period. The U.S. Attorney, or the District Attorney (or equivalent) may delegate to his/her assistants authority to enter into such agreement; or

(2) Request an exception to the destruction policy in writing to the Special Agent in Charge of the responsible division prior to the end of the sixty-day period when retaining only the threshold amount or representative sample will significantly affect any legal proceedings; and

(3) In the event of a denial of the request, may appeal the denial to the Assistant Attorney General, Criminal Division. Such authority may not be redelegated. An appeal shall stay the destruction until the appeal is complete.

(g) *Supplementary regulations.* The Federal Bureau of Investigation and the Drug Enforcement Administration are authorized to issue regulations and establish procedures consistent with this section.

[Order No. 1256–88, 53 FR 8453, Mar. 15, 1988]

## § 50.22 Young American Medals Program.

(a) *Scope.* There are hereby established two medals, one to be known as the Young American Medal for Bravery and the other to be known as the Young American Medal for Service.

(b) *Young American Medal for Bravery.* (1)(i) The Young American Medal for Bravery may be awarded to a person—

(A) Who during a given calendar year has attended by extraordinary decisiveness, presence of mind, and unusual swiftness of action, regardless of his or her own personal safety, in an effort to save or in saving the life of any person or persons in actual imminent danger;

(B) Who was eighteen years of age or younger at the time of the occurrence; and

(C) Who habitually resides in the United States (including its territories and possessions), but need not be a citizen thereof.

(ii) These conditions must be met at the time of the event.

(2) The act of bravery must have been public in nature and must have been acknowledged by the Governor, Chief Executive Officer of a State, county, municipality, or other political subdivision, or by a civic, educational, or religious institution, group, or society.

(3) No more than two such medals may be awarded in any one calendar year.

(c) *Young American Medal for Service.* (1) The Young American Medal for Service may be awarded to any citizen of the United States eighteen years of age or younger at the time of the occurrence, who has achieved outstanding or unusual recognition for character and service during a given calendar year.

(2) Character attained and service accomplished by a candidate for this medal must have been such as to make his or her achievement worthy of public report. The outstanding and unusual recognition of the candidate's character and service must have been public in nature and must have been acknowledged by the Governor, Chief Executive Officer of a State, county, municipality, or other political subdivision, or by a civic, educational, or religious institution, group, or society.

(3) The recognition of the character and service upon which the award of the Medal for Service is based must have been accorded separately and apart from the Young American Medals program and must not have been accorded for the specific and announced purpose of rendering a candidate eligible, or of adding to a candidate's qualifications, for the award of the Young American Medal for Service.

(4) No more than two such medals may be awarded in any one calendar year.

(d) *Eligibility.* (1) The act or acts of bravery and the recognition for character and service that make a candidate eligible for the respective medals must have occurred during the calendar year for which the award is made.

(2) A candidate may be eligible for both medals in the same year. Moreover, the receipt of either medal in any year will not affect a candidate's eligibility for the award of either or both of the medals in a succeeding year.

(3) Acts of bravery performed and recognition of character and service achieved by persons serving in the Armed Forces, which arise from or out of military duties, shall not make a candidate eligible for either of the medals, provided, however, that a person serving in the Armed Forces shall be eligible to receive either or both of